Number 181622, Gina Cressetti v. Cargill, Incorporated Thank you Good morning, Mr. Herrick Good morning, Your Honor And may it please the Court I am Robert Herrick, I'm here for Gina Cressetti Now, we're here today because of the erroneous denial of a wrongful death action by a magistrate judge after removal to the Massachusetts District Court What I would suggest is that the source of the error was that the judge never recognized that under Massachusetts law there is a complementarity between, on one hand, Rule 4J and on the other hand, Rule 6B The difficulty is that because she did not recognize that complementarity she basically never reached the question of whether the motion for, under Rule 6B2 should be allowed In your reliance on Rule 6B Yes How do you deal with, I think it's footnote 30 in Passatempo the Massachusetts decision that seems to specifically say Rule 6 doesn't cover this situation Well, thank you, Your Honor I think that there is confusion in the case law in Massachusetts and I freely acknowledge that I think much of the confusion stems actually from a footnote in the case of Kerrigan, it's footnote number 5 and that footnote basically, if read out of context would suggest that to actually get to Rule 6B2 you would have to meet the stringent good cause standard What do we do when we're called upon to interpret a state court rule? And we have a statement by the highest court of that state that the more stringent standard of good cause applies only where a plaintiff files a motion to extend after expiration of the original 90-day period, citing Kennedy and we have before us a case where the plaintiff files a motion to extend after the expiration of the 90-day period Well, as an initial matter, it's obvious that Rule 6B2 exists because Massachusetts courts and Massachusetts law envisions this possibility that the 90-day period would expire and that a subsequent motion would in fact be filed under Rule 6B2 The difficulty, I would suggest, is that the moment that we recognize that Rule 6B2 essentially involves an entirely different standard from Rule 4J, we basically have written Rule 6B2 out of the... No, you haven't. The way I would read it, the way I read the Kerrigan footnote 5 it says filing the motion, 6B motion later does not relieve the party of the burden of showing good cause under Rule 4J so you have to both show good cause under 4J and then you have to comply with the requirements of Rule 6 But that's why I'm suggesting, Your Honor, that it's actually being read out of context because if one were to read Kerrigan, Kerrigan makes it very clear that under circumstances like this, that Rule 4J... You're suggesting there's a conflict between the two rules I've just given you an example of where they're not in conflict, they can be reconciled Your answer to me doesn't answer my observation You simply say it's read out of context But I'd like to try to answer why it's being read out of context, Your Honor And I think the reason it's being read out of context... Your argument has to be that the Rule 4 requirement disappears if you're in a Rule 6 situation No, it's not that... What I'm suggesting is that the complementarity that Massachusetts courts view these motions suggests that there are instances where a judge will essentially have two different motions and they're competing motions, obviously In this case, these were motions that were filed on the same day And what I'm arguing is that a judge would have to treat both of the motions essentially jointly And I think what the mistake was that Judge Robertson made was that she treated them sequentially And the difficulty by treating them sequentially is that if you basically have dismissed the case before you've ever gotten to Rule 6b-2 you're in a situation where there's no action to be taken upon it I'm still having difficulty understanding what you want us to say If we were to write an opinion going your way What do you want to propose that we say about footnote 30 in Potemko? Do we say the SJC was wrong? Or confused? What I think is fair to say is that it's based on an analysis that starts from a flawed premise But we can't do that We can't tell the SJC that on a matter of SJC law they goofed up They can tell us that when we interpret their law But we can't say that to them I think it's certainly the case that just with the principles of federalism that there are limits to what this court can do At the same time, what I would suggest is that this court can also review regulatory scheme or in this case the rules in a way that is logical And what I'm suggesting is that the law as adopted by the judge essentially writes Rule 6b-2 out of existence Well you used the phrase as applied or adopted by the judge What's troubling me is you need to direct your attention towards the phrase as adopted or explained by the SJC And then when you say we need to say that it's illogical what the SJC did You're getting back to my concern that I don't think we can say that What I would suggest, Your Honor, is that this court is certainly empowered to look at Massachusetts law and obviously apply Massachusetts law And it can certainly go ahead and take a look at a flawed analysis that simply just does not wind up making sense of the laws as written in Massachusetts I understand that there are constraints on this court At the same time, we're talking about a wrongful death case where there is ample reason to find good cause And perhaps I would be best served to switch to the good cause analysis As indicated, the magistrate found that there was no good cause here What I'm arguing, and I've argued in the brief, is that what we have here is an intentional concealment of a defect in service This is not a case where there was a lack of diligence So when we look at Kerrigan, the touchstone of the good cause analysis is diligence itself This isn't a case where it's a lack of diligence What I'm suggesting is that under these circumstances where there's a finding by the magistrate that essentially says that Cargill knew that there was a defect, basically sat on it waited for the statute of limitations to run out and in turn basically filed his motion to dismiss at that point What I'm suggesting is that that wouldn't qualify as... Where in ethics law is there a provision that counsel has to point out to the opponent the problems with the opponent's position? Well, I wouldn't suggest... It's so contrary to the adversary system, isn't it? But what is not contrary to the adversary system, Your Honor, is a requirement of objection Where do you find an obligation on this company to tell you your service or process was inadequate? And why should they have to think about that? But I've pointed to case law from Kansas, from Washington, that essentially says we're not going to do this as a matter of the goodness of their heart but we are going to impose an obligation to object if there's a vice in the service or process And under those circumstances, the failure to raise an objection has consequences An untimely, premature objection, not required by the rules And yet, Washington, Kansas law, this is a concept that is universally deplored Every jurisdiction that has addressed the issue has condemned it But they've been talking... Most of those cases involve someone actively evading service Here, there's no evading at all They're completely passive They get a defective notice in the paper Whoever receives it signs for it They do nothing They don't represent that they think the service... And as soon as someone tries to act as if they did receive service they timely note an objection If I could respond? Yes What I would note, though, Your Honor, is that when the federal rules were being amended this question came up And the question... The Rules Committee, essentially, in its commentary  intentional concealment of defective service But what did they do to evade service? What I'm saying is the concealment of defective service They didn't conceal anything It was grouped What did they conceal? They basically knew that this was defective sat on it and then tried to... By that definition, they also concealed the fact that you were blowing the statute or the trial counsel was blowing the statute of limitations Should they have called you up and said the statute of limitations is about to run? I think there are actually parties that would actually act in that way But beyond that, I think that imposing an obligation or recognizing an obligation to object is certainly within the court's... the Massachusetts court's prerogative And it's been done in other cases And with that, I would... Thank you Thank you Good morning Good morning. Thank you. May it please the court Pass a Tempo is absolutely dispositive of the issue that was the subject of the first part of the discussion It is supported by a case ten years earlier than that that's in the briefs as well called NET where the SJC was answering this court's questions and spoke of Rule 4J and noted that where the 90-day rule wasn't complied with the only exception to that is good cause likened that to a statute of repose saying that after that 90-day period the defendant can be secure in its understanding that the slate has been wiped clean and that that conduct can no longer give rise to any liability So the questions, I think, are... The key question is Was there good cause? And of course, the standard for review on that question is abuse of discretion The parties have agreed on that This court's decision in Osborne made that clear Cargill couldn't have called up the Plaintiff's Council even had it wanted to and said you're going to blow the statute of limitations because Cargill didn't know anything about the lawsuit until after the statute of limitations had passed The argument that that Cresetti is making on appeal about good cause is not the argument that the Massachusetts cases dictate is the most... is the key part of that inquiry 28 years ago in the Schuman case the appeals court in Massachusetts in a published case whose first sentence says that the sole issue on appeal is this topic of Rule 4J and good cause The Schuman case articulated some principles about what good cause means It's a stringent standard It requires diligence It requires that the plaintiff established has the burden of showing good cause and said that the focus of the inquiry is on the reasonableness and diligence of the plaintiff's attempts to serve process There is literally nothing in Cresetti's presentation to this court on what the Massachusetts appeals court says should be the focus of the inquiry which is the reasonableness and diligence of the attempts to serve For example There's no explanation offered to this court of why the plaintiff didn't avail itself of the option of simply serving Cargill's registered agent to Massachusetts There's no explanation in this court of why the plaintiff didn't address the service to the particular officers of the corporation that the Massachusetts statutes and rules require for service by mail on a foreign corporation There's no explanation at all on the very topic that Schuman dictates is the focus of the inquiry The only argument on good cause is about Cargill's actions and the allegation that we've concealed something I suggest that Cargill can't conceal from the plaintiff's counsel what the plaintiff's counsel the information that the plaintiff's counsel already has The service defect in this case is a combination of what does the rule require and what did the plaintiff's counsel do Cargill can't and didn't conceal from the plaintiff's counsel what the rule requires and Cargill can't and didn't conceal from the plaintiff's counsel what the plaintiff's counsel did All of that information was in the plaintiff's counsel's hands Cargill couldn't possibly conceal what the plaintiff's counsel already had The other topic I would like to mention has to do with excusable neglect The district court didn't reach this topic and we don't believe it needed to and we don't believe this court needed to I think it's worth noting, though that even if an excusable neglect analysis were to be done here and even if it were to be done based on the standard that Cresetti suggests in her brief based on the Pioneer case from the U.S. Supreme Court the result is there is no excusable neglect here The Pioneer case did change the law on this topic In this court, in 2001 in a pair of cases hospital-to-maestro and graphic communications considered what is excusable neglect in the context of Pioneer In both of those cases there was a deadline missed by one day and in both of those cases the result was that the claim was extinguished In both of those cases this court said that of the four factors that Pioneer established prejudice, length of delay the reason for the missed deadline and bad faith that those four are created equal hospital-to-maestro and graphic communications both said that it is the third factor the reason for the missed deadline that is of the greatest import In both of those cases there was no prejudice In both of those cases there was a very little length of delay one day and there was no indication of bad faith But both of those cases extinguished the claims because of the factor that those cases said was the most important Graphic communications said that there needs to be a satisfactory explanation and we come here again to the point I made a moment ago In Presetti's presentation to this court she talks about prejudice at some length talks about the length of delay at some length as to the third and fourth factors lumps them together into one sentence and says there was no bad faith There is literally no explanation offered to this court that would justify a finding of excusable neglect and thus for the very same reasons in hospital-to-maestro and the graphic communications case there couldn't be such a finding here  I'll sit down, thank you Thank you Thank you All rise